ANNIE R. STARR et al. v. JOHN F. BARTZ et al., Appellants.

Division One, March 31, 1909.

1. PARTITION: Wife As Heir: Interest of Husband. Land allotted to a married daughter of decedent in a parol partition goes to her, not as a purchaser under the partition deed, but by inheritance; and though the partition deed expresses that the land allotted to her is conveyed to her and her husband, he takes no greater share or interest in the land than he would have had had he not been named in the deed.

2. ———: ———: ———: Subsequent Quitclaim. And a subsequent quitclaim deed to the wife and her husband, made by her coheirs after the original partition deed had been executed and after the husband and his wife had taken possession of the land set apart to her in the amicable partition, conveyed no title at all, and he took nothing thereunder.

Starr v. Bartz.

3. ———: ———: ———: Quitclaim Deed: Deed of Gift: Sale by Grantee.   Where the husband of one of the coparceners, after the partition, obtained from her coheirs a quitclaim deed to her and himself, without consideration, and after the wife's death conveyed the land as a gift to one of her sons, whether his deed was a warranty or a quitclaim, his deed conveyed to that son only his curtesy right, that is, a life estate, and the grantee of that son, whether by warranty or quitclaim deed, took only a life estate.

4. ———: ———: ———: ———: Effect: Record: Equities: Notice: Consideration.   A purchaser under a quitclaim deed is not a bona-fide purchaser; he takes whatever title the grantor had to convey, subject to existing equities, except in cases where the registry statute protects him; but though a recorded quitclaim deed shows the title to be in the grantor, the grantee is chargeable with notice that the recorded chain of title shows to the contrary, and he is also required when he asserts title under such a deed, whether made to himself or to his grantor, to show that the quitclaim deed was supported by a valuable consideration and that the recited consideration was paid.

5. LIMITATIONS: Curtesy: Suit By Remaindermen.   Where land was set off by amicable partition to a daughter, and she died leaving a husband with a curtesy right, her children are not barred by limitations to maintain suit for the land against the husband's grantees for ten years after his death, and not even then if they were married women at the time of the husband's death and have continued to be since.   The wife could not in her lifetime have maintained a suit in equity against her husband to have him divested of the title he had fraudulently obtained by a quitclaim deed from her coparceners conveying the land to him and to her after the land had been allotted to her by amicable partition and they had taken possession, nor could she have had him declared a trustee of the title to her use.   Such a deed conveyed nothing to him and did not create a resulting trust for her benefit, but was a nullity in his hands and in the hands of his vendee, and the possession of such vendee was not adverse to her children while her husband lived.   [Distinguishing Reed v. Painter, 145 Mo. 341.]

6. CLOUD ON TITLE: Unrecorded Deed.   An unrecorded deed, concealed from the grantee until after her death, is no cloud upon her title.   Land had been allotted to a daughter under an amicable partition and she and her husband took possession thereof, and thereafter her husband obtained from her coparceners a quitclaim deed to her and himself, and the deed was concealed from her and was not recorded until after her death, when the husband conveyed the land to others.   Held, that the deed was no cloud upon her title, and she was under no legal obligations to take steps to have it removed.

7. **ESTOPPEL: Constructive Notice.** Constructive knowledge of what the records showed, in the face of proof positive that there was no actual knowledge, cannot be made the basis of estoppel. Where land descended to plaintiffs' mother and was set off to her by amicable partition, and after possession was taken thereunder by her and her husband he obtained a quitclaim deed to himself from the other coparceners, and conveyed a part of the land by deed of gift to a son, and another part to another daughter, and other lands of his own to plaintiffs, they are not estopped to set up claim to the lands conveyed to the son and by him conveyed to defendant, simply because the records showed the quitclaim from the other coparceners to their father, and also showed that he never owned the lands but had only a curtesy therein, if they actually knew nothing about how he derived title, and the defendant when he bought had the records examined and bought relying on the belief that they showed title in the son.

8. ————: ————: **Improvements.** Nor are plaintiffs chargeable with estoppel by the fact that defendant put valuable improvements upon the land, if they did not know when the improvements were made that the title was in them.

Appeal from Bates Circuit Court.—*Hon. Chas. A. Denton,* Judge.

Affirmed.

*Silvers & Silvers* for appellants.

(1) (a) At common law, and before the enactment of Sec. 4335, R. S. 1899, a married woman could not be estopped *in pais* in respect to her real estate, because she could not convey nor contract for the conveyance of the same, expressly; and it was held that she could not do by implication or estoppel that which she could not do by express contract. Muller v. Kaessmann, 84 Mo. 329. (b) This decision was rendered in 1884. Since that time, and in 1889, the statute relative to the rights and powers of married women with respect to their real estate has been changed. R. S. 1889, sec. 6864, same as R. S. 1889, sec. 4335. (c) Since the enactment of this section, a married woman can convey

219 Sup.—4

the legal title to her real estate, by deed or contract. 25 Am. and Eng. Ency. Law (2 Ed.), 345; Bank v. Hageluken, 165 Mo. 443; Clay v. Mayer, 183 Mo. 150. (d) At the same time Sec. 4340, R. S. 1889, was amended, making land coming to the wife by inheritance (as plaintiffs claim this did) her separate property. (e) In respect to such of her property as she was able to convey or contract to convey, a married woman has always been subject to estoppel *in pais*. Rannels v. Gerner, 80 Mo. 483; Cottrell v. Spiess, 23 Mo. App. 41. This last case was reversed by the Supreme Court in the 138 Mo. 366, the Supreme Court upholding the principle announced, but holding that the facts did not warrant an estoppel. Leete v. Bank, 115 Mo. 203; 2 Pomeroy's Equity Jurisprudence (Ed. 1881), p. 278, sec. 814. (f) A married woman cannot stand by and permit another to be clothed with the indicia of ownership, by which third persons are misled in their investments. Though such conduct is not, in itself, fraudulent, the law holds it to be a fraud—after such conduct has taken place—for her to deny the results flowing therefrom. Wisehart v. Hedrick, 118 Ind. 341; Iersch v. Norton, 115 Ind. 341; Maxon v. Lane, 124 Ind. 592; Duckwell v. Kisner, 35 N. E. 698; Holcomb v. School District, 67 Minn. 321. (g) When it is the duty of a married woman to speak out, and she does not do so, and another is injured thereby, she is estopped by her silence. Building, Etc., Co. v. Denny, 154 Ind. 261; Duckwell v. Kisner, 136 Ind. 99; Ingalls v. Ferguson, 59 Mo. App. 299; Holcomb v. School Dist., 67 Minn. 321; Lawrence v. Brown, 5 N. Y. 394. (2) (a) Plaintiffs, with knowledge of all the facts, without objection, suffered defendant to make improvements and expenditures on the property, under a claim of title thereto, thus misleading defendant to defendant's prejudice, and plaintiffs are therefore estopped to now assert any title to the land; such conduct having occurred since the enactment of Sec. 4335, R. S. 1899. 16 Cyc. 765-766,

and authorities under note 88; Craddock v. Short, 134
Mo. 457; Thomas v. Pullis, 56 Mo. 211; Collins v. Ro-
gers, 63 Mo. 516. (b) Plaintiffs knew that Joel Lee
claimed the land in suit as his property. They knew
that he sold it to defendant Bartz, an innocent pur-
chaser, for a valuable consideration. They sat by in
silence and saw Lee and Bartz improve the land, while
they lived within sight of it. They never raised their
voices against such purchase or improvement of the
land. Under these circumstances they are estopped
from now claiming an interest in the land. 16 Cvc.
762, and cases cited under note 78; Guffey v. O'Reiley,
88 Mo. 418. (c) Plaintiffs, with full knowledge of the
facts, delayed bringing their suit for a period of six-
teen years, from 1889, when they became subject to the
law of estoppel with respect to this land, until 1905,
when this suit was brought. Under these circum-
stances they are estopped by their laches. "A court
of equity does not lend a helping hand but to the
prompt and diligent." State ex rel. v. West, 68 Mo.
232; Schradski v. Allbright, 93 Mo. 48; Landrum v.
Bank, 63 Mo. 56; Bradshaw v. Yates, 67 Mo. 232; Kline
v. Vogel, 90 Mo. 247; Kroenung v. Goehri, 112 Mo. 641;
Condit v. Maxwell, 142 Mo. 277. (3) Margaret S. Lee,
mother of plaintiffs, had a right of action in equity
against her husband, D. P. Lee, during her lifetime,
to divest him of any apparent title to the real estate
here in question, and to perfect her title thereto and re-
move therefrom the cloud created by the deed convey-
ing the same from the other heirs of Grosshart to him
and her jointly. This is true as to all her property
rights, whether her separate estate or not. R. S. 1899,
sec. 4267; Laws 1868, p. 87; R. S. 1879, sec. 3468; Wal-
ter v. Walter, 48 Mo. 45; Barber v. Barber, 21 How.
582; Sackman v. Sackman, 143 Mo. 576; Rosenberger
v. Mallerson, 92 Mo. App. 27; Reed v. Painter, 145 Mo.
354.

*Thos. J. Smith* for respondents.

(1) The oral partition of the lands of Samuel Grosshart among the heirs being followed up by the possession of the land set off to Mrs. Lee, vested the title thereto in her, subject to the marital rights of the husband. Her title to this land did not depend upon the execution to her of a deed of conveyance. Such deed if made conveyed no new title, but only defined her interest in the estate. Whitsett v. Wamack, 159 Mo. 14; Palmer v. Alexander, 162 Mo. 131; Snyder v. Elliott, 171 Mo. 370; Propes v. Propes, 171 Mo. 417. (2) If this had not been true, still the first deed, though not in fact ever recorded, but delivered to Mrs. Lee, would have vested the title to the land in question in Mrs. Lee; so that Dr. Lee took no title by the deeds made to him. The title having passed to Mrs. Lee, subject, of course, to the marital rights of her husband, was not in fact affected by the subsequent deeds in which Dr. Lee's name appeared as a grantee, and because not recorded in her lifetime, consequently constituted no cloud upon her title, and she had no cause of action to remove the same. (3) There being no evidence in this case that Mrs. Lee ever had any knowledge that Dr. Lee was named in the deeds as one of the grantees with her, and the deeds themselves not having been put of record during her lifetime, and he having paid no consideration for the conveyance, whatever apparent title to the land in question he received thereby was a fraud as against his wife and her children and as to which no Statute of Limitations began to run until after the discovery of the fraud, which in this case was shown to have been within a few months of the bringing of this action. Prewitt v. Prewitt, 188 Mo. 684. (4) Dr. Lee, having married the mother of these plaintiffs in the year 1855, and long before the Married Woman's Act of 1873 was passed, was not affected thereby, and retained all his marital rights in the same measure as if no such statute had ever been

passed, and was during the lifetime of his wife entitled
to the exclusive possession of her real estate as a mar-
ital right, and likewise after her death by virtue of his
curtesy initiate. Leete v. Bank, 115 Mo. 184; Winn v.
Riley, 151 Mo. 65; Gladney v. Sydnor, 172 Mo. 330;
Graham v. Ketchum, 192 Mo. 28. (5) The considera-
tion for the conveyance of the land in question having
moved from Mrs. Lee only, any title which Dr. Lee
acquired by virtue of such conveyance he held in trust
for his wife. Cox v. Cox, 91 Mo. 71; Broughton v.
Brand, 94 Mo. 169. And this is true, although deeds
were executed to Dr. Lee and his wife jointly. Jones
v. Elkins, 143 Mo. 647; Hardware Company v. Horn,
166 Mo. 129; Crawford v. Jones, 163 Mo. 579; McLeod
v. Venable, 163 Mo. 536. (6) The Married Woman's
Act was never amended so as to make the inherited
real estate of a married woman her separate estate
until 1889, more than seven years after the marriage
of the plaintiffs with their husbands. This statute,
under the circumstances, did not affect the status of
either the wives (plaintiffs) or their husbands with
regard to this real estate nor their rights thereto, the
statute being prospective only in its operation. Au-
thorities cited under point 4. (7) The interests of
Mrs. Annie Starr and Mrs. Dennie Starr in this land
not being a separate estate which they could convey,
or with reference to which they could contract separ-
ately from their husbands, because their title accrued
prior to the amendment of 1889 of the Married Wom-
an's Act, as to that land they could not be estopped
by matters in pais. Mueller v. Kaessmann, 84 Mo. 318.
(8) Many of the essential elements of estoppel in any
case by matters in pais were not proven in this case.
It was not shown that plaintiffs knew what their rights
were with regard to this land while any of the matters
pleaded as estoppel were being done, but on the con-
trary it appears they did not know, nor was it shown
that defendants performed any act or spent any money

upon the land in question in consequence of the action of the plaintiffs, or either of them, both of which facts are necessary to be shown in order to work estoppel as against a person *sui juris*. Harrison v. McReynolds, 183 Mo. 548. (9) Defendant Bartz took his title to the real estate in question with notice of the rights of plaintiffs, his entire record title being derived through deeds of quitclaim only. Hope v. Blair, 105 Mo. 95; Condit v. Maxwell, 142 Mo. 266. These deeds of quitclaim put defendant Bartz on inquiry as to the real consid- ration for such deeds, which if followed up would have disclosed to him the real facts in the case, showing that Dr. Lee in fact never had any equitable right to the property in question. Vaughan v. Tracy, 22 Mo. 418; Major v. Buckley, 51 Mo. 231; Fellows v. Wise, 55 Mo. 415; Meyer v. Blevins, 80 Mo. 179; State Bank v. Frame, 112 Mo. 512; Whitsett v. Wamack, 159 Mo. 14.

VALLIANT, J.—From the plaintiffs' petition, as set out in the abstract, it is not entirely clear what kind of a suit this was intended to be. Plaintiffs in their brief say the petition is in two counts, but if so some of it has been omitted from the abstract, as it is evident some of the judgment or decree has also been omitted both from the abstract and from the short transcript on which the cause was brought to this court. But the suit was tried on the theory that it was a suit for the partition of land and as both parties seem to acquiesce in that view of the case and as the petition is susceptible of that construction we will so consider it.

The land in question lies in Bates county. It with other lands was owned in his lifetime by Samuel Grosshart, who was the grandfather of the plaintiffs Annie and Dennie Starr and of the defendant Margaret Kisner. Grosshart died intestate in 1862, leaving six children, four sons and two daughters. One of the daughters, Mildred the wife of Dr. D. L. Lee, died intestate in 1882, leaving her husband, Dr. Lee, and four chil-

dren, Annie Starr, Dennie Starr, Margaret Kisner and Joel Lee. At the time of her death, in 1882, Mrs. Lee owned the land involved in this suit, in fee simple, and it descended to her four children in equal parts subject to her husband's right of curtesy, unless the title in fee devolved on him at her death by virtue of a deed to be presently mentioned.

The plaintiffs claim title as heirs of their mother, each an undivided one-fourth, conceding to their sister Mrs. Kisner, and to the defendant Bartz as assignee of their brother Joel, each an undivided one-fourth, but Mrs. Kisner asserts no claim to the fifty acres involved in this suit; the land she claims is in question in another suit, which is a twin to this one and will be considered next after this one.

In 1887, five years after the death of his wife, Dr. Lee executed a deed whereby he essayed to convey (and if he had title did convey) to his son Joel the land in suit, and December 31, 1900, Joel conveyed whatever interest he had to defendant Bartz. Dr. Lee died in 1898.

If Dr. Lee held the fee simple title in 1887, when he made the deed to Joel, the plaintiffs have no title to the land, but if he had then only a life estate, by curtesy, the plaintiffs have a right each to one-fourth, unless they have lost their right by operation of the Statute of Limitations or are estopped to assert it.

We will now turn back to the source of title. The plaintiffs' mother married Dr. Lee, their father, in 1855, when the common law as to marital rights prevailed. Samuel Grosshart in his lifetime owned about seven hundred acres of land, the most of it in Cass county but about one hundred and forty acres lay in Bates county, the land in this suit is fifty acres of the Bates county land. Grosshart died in 1862 and descent was then cast on his six children above named. In 1877 these six heirs made an amicable partition of the land they had inherited, setting off to each his or

her share and executed deeds *inter sese* to carry the partition into effect. Whether there were several deeds, one to each heir, or only one deed signed by all, is not entirely clear, but a deed or deeds were executed carrying that partition into effect. In that partition the one hundred and forty acres of Bates county land were set apart to Mrs. Lee and a deed to her from her coheirs, or the joint deed if but one was made, was delivered to her. That deed was not produced in evidence, but the fact that it was made and delivered to her and that thereupon she and her husband went into possession of the land so allotted to her and that they lived on it until her death, are facts conceded. In fact none of the deeds on which the parties seem to rely appear in the record before us, although a brief description of some of them is given and at the close of the evidence there was an agreement of counsel in a colloquy with the court that thereafter, when the argument should be heard, either party should have the right to produce any deed or deeds he might see fit to produce. Whether either party availed himself of that right does not appear. It would have been more satisfactory to us if we could have seen the deeds or copies of them, but we will have to take the record as we find it.

Sometime after the execution of the partition deed or deeds and after Dr. Lee and Mrs. Lee had taken possession of the land allotted to her, Dr. Lee went to Cass county where the other heirs lived and told them that the deed they had made setting apart the Bates county land to Mrs. Lee was defective in respect of the acknowledgment, and to cure that defect, he asked them to execute another deed which he had already prepared and which was a quitclaim deed to himself and his wife for the Bates county land and on that request they executed the deed, that is, all of them but one, to-wit, G. W. Grosshart. That occurred in 1877 or 1878. That deed was not put on record during the

lifetime of Mrs. Lee and there is no evidence that she
ever heard of it; it was recorded in 1887 five years after
her death.   When defendant Bartz bought the land
from Joel he had the title examined and was advised
that there was a defect in it owing to the fact that one
of the heirs, that is, one of the sons of Grosshart, had
not joined the other heirs in the execution of the quit-
claim deed to Dr. Lee and wife, and he applied to that
one, to-wit, G. W. Grosshart, to make a quitclaim deed
to cure the defect and it was done.   There is a good
deal of testimony on the subject of the improvements
made by Joel and afterwards by defendant Bartz on
the land.   It appeared in the evidence that a good deal
of the improvements claimed were made by Joel during
the lifetime of his father, that is, during his father's
life estate as tenant by the curtesy.   The trial court
weighed this testimony pro and con and balancing the
value of the improvements against the rents and
profits found that the improvements exceeded the rents
and profits to the amount of $64.50, and in the decree
required that much to be paid to defendant out of the
proceeds of that land at the partition sale before divi-
sion.   As the case is now presented to us there is no
complaint as to the correctness of the balance.   The
decree was that the plaintiffs were entitled to half of
the land, that is, one-fourth each, and the defendant
the other half; that the land be sold for partition and
the proceeds, after deducting costs and paying de-
fendant the $64.50 above mentioned, should be divided
as above indicated.   The defendant Bartz has ap-
pealed from that decree.

I.   The quitclaim deed to Dr. Lee and wife, made
by her coheirs after the original partition deed had
been executed and after he and his wife had taken pos-
session of the land set apart to her in the partition,
conveyed no title at all.   After the partition had gone
into effect the brothers and sister of Mrs. Lee had no
title to the land they had allotted to her, no interest

either to convey or to release. Even if in the original partition deed it had been expressed that the land allotted to Mrs. Lee as the share of her inheritance was thereby conveyed to her and her husband, the latter would have taken no title greater than that which he would have taken as her husband if he had not been named in the deed at all. The title went to Mrs. Lee, not as purchaser under the deed, but by inheritance. The law in such case is declared in Whitsett v. Wamack, 159 Mo. 14. During the lifetime of Mrs. Lee, under the law as it then was, her husband was entitled to the possession of her legal real estate, and after her death he became a tenant by the curtesy for life. The deed from Dr. Lee to his son Joel conveyed only such title as the grantor himself had. Even if it had been a warranty deed it was only a deed of gift and therefore no claim of a *bona fide* purchaser for value could be made. The deed conveyed to Joel his father's life estate in the land, neither more nor less. The father died in January, 1898, and in December, 1899, Joel sold the land to Bartz; the deed from Joel to Bartz is not in the record and therefore we cannot say what kind of a deed it was, but even if we assume that it was a warranty deed it conveyed no title because Joel's title had expired when his father died, and his possession had continued only two years.

It is insisted, however, that the record showed the title to be in Dr. Lee when he made the deed to Joel, and that defendant Bartz relied on the record when he purchased. The evidence does show that Bartz had the records examined and he became satisfied from the examination that his vendor had a good title. His examination of the record, if he conducted it with reasonable care, must have shown him that the land was owned by Samuel Grosshart at the time of his death in 1862, and he should have known that the title then passed either to a devisee, if there was a will, or to the heirs of Grosshart, and it behooved him to inquire where

it went. Pursuing this inquiry he found on the record a quitclaim deed from four of the heirs of Samuel Grosshart to Dr. Lee and wife; he also found that the recording of this quitclaim deed bore the suspicious evidence of having been withheld from record until a belated period, until after one of the heirs, to-wit, Mrs. Lee, herself had died, and that it lacked the signature of one of the heirs yet living, and to supply this latter defect he obtained a quitclaim deed from this last mentioned heir, G. W. Grosshart, which deed was given without any consideration at all. Thus the evidence shows that the defendant bought with notice that the land had descended to the heirs of Samuel Grosshart, and with such notice he can make out a record title only by tracing it to that source and that he attempted to do.

It is the law of this State that a purchaser for value under a quitclaim deed acquires whatever title the grantor had at the time of the delivery of the deed. [Wilson v. Albert, 89 Mo. 537; McAnaw v. Tiffin, 143 Mo. 667.] We have also held that a purchaser for value under a quitclaim deed is under the protection of our registry act and that his title, so acquired, is good against a prior unrecorded deed of which he had no actual notice. [Fox v. Hall, 74 Mo. 315; Boogher v. Neece, 75 Mo. 383; Willingham v. Hardin, 75 Mo. 429.] But that is the extent to which our law has gone in upholding the title under a quitclaim deed. A purchaser under such a deed is not a *bona fide* purchaser; he takes whatever title the grantor had to convey subject to existing equities, except in cases where the registry act protects his title. [Ridgeway v. Holliday, 59 Mo. 444; Campbell v. Laclede Gas Lt. Co., 84 Mo. 352; Schradski v. Albright, 93 Mo. 42; Hope v. Blair, 105 Mo. 85.] In Campbell v. Laclede Gas Lt. Co., above cited, the court, after saying that the rule that the purchaser under a quitclaim deed took subject to existing equities was subject to the exception that the equities referred

to were such as could be spread on the records, said that the quitclaim deeds in that case were wanting in another very essential element to exempt them from the rule that charges them with notice of outstanding equities, that is, it was necessary for the party claiming under such a deed to show that value was paid for it. In that case the court said the deeds were not in the record before the court so that there was not even a prima-facie showing by their recitals that value was paid, but instead of producing the deeds the counsel had contented themselves with stating in the record that a quitclaim deed duly executed, etc., was offered. The court, speaking through MARTIN, C., said: "I do not think this statement is equivalent to the proof of payment of value, which was necessary to exempt them from the general rule making quitclaim deeds notice of pre-existing equities." That is just the condition of this record; none of these deeds are produced before us and no effort was made to show that value was paid for either of them except the last deed from Joel to Bartz. On the contrary it is shown that Dr. Lee paid nothing for the quitclaim deed to him, that the deed to Joel was a gift, and that the quitclaim deed obtained from G. W. Grosshart was without consideration. Bartz knew that this land had descended from Samuel Grosshart to his heirs, that during the lifetime of Mrs. Lee it was in the possession of herself and her husband, that she was one of the heirs of Samuel Grosshart, that the title which he (Bartz) was buying came from that source through quitclaim deeds. He was chargeable with notice of the character of title he was buying.

II. Defendant contends that the plaintiff's right to maintain a suit of this kind is barred by the Statute of Limitations. The point presented is that the mother of the plaintiff in her lifetime could have maintained a suit in equity against her husband to divest him of the title he had fraudulently obtained or to have him

declared a trustee of the title to her use, but not having done so the right to sue descended to her heirs, but their right to sue was limited to three years after the death of their mother as prescribed in section 4267, Revised Statutes 1899, Ann. Stat. 1906, p. 2342. Defendant refers to Reed v. Painter, 145 Mo. 341, construing that section of the Statute of Limitations. In that case the husband, having been intrusted with money of the wife with which to buy land for her, bought it, but fraudulently took the title in his own name. The suit was by the heirs of the wife against the husband to divest the title or declare a resulting trust.

But this is not that kind of a suit. These plaintiffs are not seeking to set aside the deed their father obtained on the ground of his fraud in obtaining it. They say that on the face of the quitclaim deed itself, in the light of the record title, the deed conveyed nothing, that the title was in their mother by inheritance from her father and by the allotment of this land to her in the amicable partition. And so the evidence shows. The quitclaim deed which their father afterwards obtained is not in their way, it was a nullity in his hands and is a nullity in the hands of his assignee with notice. There was nothing about which Mrs. Lee could go to law with her husband, in her lifetime. At the most that could be said for the deed it was but a cloud on her title, but it was not even that because it was not recorded, it was concealed during her lifetime and not recorded until five years after her death. Certainly no cloud was cast on her title while she lived, and she knew nothing of the existence of the deed. What then could she have said to a court of equity if she had gone into that court to complain of her husband? He had a right to the possession of the land during the lifetime of his wife, because so the law was at the date of his marriage in 1855, and so it was at the date the title descended to his wife on the death of her father in 1862, and after her death he was entitled to possession as tenant by the

curtesy. Joel's possession was not adverse while his father lived, because he was holding by deed of the life tenant. The life tenant died in 1898 and this suit was begun in 1905. The plaintiffs are not barred by the Statute of Limitations. In fact the statute has not yet begun to run against them because they are both married women.

III. But it is said they are estopped, that they have stood by and seen all these vast improvements made and have suffered their brother to sell this land to defendant Bartz and have suffered Bartz to continue making improvements, etc. As to the improvements the evidence shows that part of them at least were made by Joel during the lifetime of his father. But the evidence shows and the chancellor found that, weighing the value of the improvements against the rents and profits, the balance in favor of the improvements was only $64.50 and that is allowed by the decree to the defendant Bartz out of the proceeds of the sale to be made, and there is no complaint now made of the decree on that account.

The evidence shows that at about the time Dr. Lee made the deed conveying this land to Joel he made a deed to his daughter Mrs. Kisner conveying to her the other 90 acres of this Bates county land and that conveyance is the subject of the other suit now pending as above mentioned. And about the same time he made to each of the plaintiffs a deed to certain land, to what extent in value as compared with that conveyed to Joel and Mrs. Kisner does not clearly appear, but that is unimportant because the land their father conveyed to the plaintiffs was land of his own, not derived from his wife; it is referred to by counsel for defendant in connection with the plea of estoppel. It was not shown, however, that either of the plaintiffs knew the character of the title that was attempted to be conveyed to Mrs. Kisner and Joel or in fact that they knew any-

thing about how their father derived or supposed he derived title to the land in question. Joel himself wh n he took the deed did not in fact know that the land had come to his mother by inheritance or that it was her land and the plaintiffs knew nothing about it until a very short while before they brought this suit. Their first information came from one of their uncles in December, 1904, and this suit was begun in January, 1905. True they had constructive knowledge of what the county records showed, but constructive knowledge in the face of proof positive that there was no actual knowledge cannot be made the base of a charge that they fraudulently kept silent when they should have spoken and are therefore estopped from speaking now. These plaintiffs knew nothing of the sale by Joel to Bartz until after it had been made, therefore they could have done nothing to induce the defendant to make the purchase. There is no evidence that defendant was misled by any conduct of the plaintiffs or that he relied on anything they did or said; on the contrary the evidence shows that he had the records of land titles searched and was guided by what he was informed was the result of the examination. Even, therefore, if these plaintiffs had not been, as they are, married women, and, therefore, with reference to land acquired before the Married Woman's act made it their separate estate, not subject to the law of estoppel in its strictest sense, they are nevertheless, under the facts of this case, not estopped.

We find no error in the record. The judgment is affirmed. All concur.