### GALLUP v. HULING et al.

(Circuit Court of Appeals, Fifth Circuit. April 28, 1917.)

No. 3045.

1. HUSBAND AND WIFE ⬅➡267(8)—COMMUNITY PROPERTY—CONVEYANCE—INNOCENT PURCHASERS.

Though land conveyed to a married man in 1838 was deemed to be community property under the laws of Texas, and though the children of the wife inherited her interest, where the apparent legal title to all the land·was in the husband, an innocent purchaser for value from the husband would be protected against the claims of the wife's heirs.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 934.]

2. HUSBAND AND WIFE ⬅➡267(8)—COMMUNITY PROPERTY—CONVEYANCE—INNOCENT PURCHASERS.

A mere quitclaim or transfer of a chance of title will not protect a purchaser of community land from the husband, under the rules for the protection of innocent purchasers.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 896, 934.]

3. VENDOR AND PURCHASER ⬅➡224—BONA FIDE PURCHASER—NATURE OF INSTRUMENT.

A deed conveying all of the grantor's title, interest, and estate in a tract of land known as the headright of L., namely, the lower or southern half of such league of land, and the northeastern quarter thereof, containing 3,321 acres, to have and to hold "the said 3,321 acres," and containing a general warranty binding the grantors to defend the 'land, was not a mere quitclaim, notwithstanding the use of the words "title" and "interest," and the grantee was entitled to the protection accorded innocent purchasers.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 469–473.]

In Error to the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Suit by Thomas B. Huling and others against David L. Gallup. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Ballinger Mills, of Galveston, Tex. (Terry, Cavin & Mills, of Galveston, Tex., on the brief), for plaintiff in error.

T. L. Foster, E. E. Townes, R. E. Hardwicke, and Leon Sonfield, all of Beaumont, Tex., and John Dowell, of Houston, Tex., for defendants in error.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BATTS, Circuit Judge. January 22, 1838, William and Sarah Lakey conveyed to Thomas B. Huling land in Texas by an instrument, from which is the following:

"Do grant, bargain, sell, alien, convey, confirm, quitclaim unto Thomas B. Huling, of the county of Jasper, town of Zavalla, and Republic aforesaid, his heirs, executors, administrators, and assigns, all of our right, title, interest, and estate of our heirs, executors, administrators, and assigns in and to a certain tract or parcel of land out of our headright in land lying and being situated on the Ayish Bayou, being a part of a league of land being three-fourths of a league, being the lower half of said league, taking one-half front on said Bayou and one-fourth lying on the back part of the upper half of said league, making thirty-three hundred and twenty-one (3,321) acres English measure, being three-fourths of said league obtained from G. A. Nixon as commissioner for Zavalla Colony and the Mexican government."

At the date of the execution of the deed, Thomas B. Huling was married to Sarah Huling. After the death of Sarah Huling, Thomas B. Huling and Elizabeth Huling, then his wife, executed the following deed, dated July 20, 1846:

"State of Texas, County of Jasper.

"Know all men by these presents, that we, Thomas B. Huling and Elizabeth Huling, of the county and state aforesaid, for and in consideration of the sum of two thousand five hundred dollars good and lawful money in hand paid by James S. Espey and A. M. Piper, of the city of Harrisburg, county of Dauphin, state of Pennsylvania, the receipt whereof is hereby acknowledged, have granted, bargained, released, aliened, and conveyed, and by these presents do grant, bargain, release, alien, and convey, unto the said James S. Espey and said A. M. Piper, their heirs or assigns, all of the title, interest, and estate of ourselves, heirs, and assigns in and to the following described tract or parcel of land, situated in the state of Texas, county of San Augustine, on a stream called the Ayish Bayou, on the waters of the Angelina, and known as the headright league of William Lakey, granted to said Lakey by the Mexican government as a colonist, and on land said Lakey now resides, namely, the lower or southern half of said league of land and the northeastern quarter of said land, containing thirty-three hundred and twenty-one acres, more or less, English measure, and by said Lakey conveyed to me in deed recorded March, 1840, in said county of San Augustine, the lines and boundaries of which are fully set forth in the county surveyor's office in the said county of San Augustine and in the Spanish grant to the same, to have and to hold the said thirty-three hundred and twenty-one acres of land as herein set forth, namely, the lower half and northeastern quarter of said Lakey league, to the said James Espey and A. M. Piper, their heirs and assigns, with all the privileges and appurtenances thereunto belonging from us, the said Thomas B. and Elizabeth Huling, our heirs and assigns, forever, and do hereby warrant and defend said land to said James S. Espey and A. M. Piper from ourselves, heirs or assigns, and each and every person claiming the same.

"In testimony whereof we hereunto set our hands and scrawls by way of seals this 20th day of July, Anno Domini eighteen hundred and forty-six.

"Thos. B. Huling.    [Seal.]
"Elizabeth Huling.    [Seal.]"

"In presence of Thos. H. Espy.
        "H. Williams."

The plaintiff in error holds under this instrument, and defends a suit brought by the heirs of the first wife of Thomas B. Huling for one-half of the land. Under the direction of the court, the jury returned a verdict for the plaintiffs, and judgment was accordingly entered.

[1, 2] Under the laws of Texas the land was "deemed to be" community property of Thomas B. Huling and his first wife. Upon her death her children inherited her interest in the community estate, namely, one-half. The apparent legal title to all the land, however, was in Thomas B. Huling, and an innocent purchaser for value from him will be protected. If the deed from Huling is a mere quitclaim—a mere .transfer of a "chance of title"—his grantee or transferee will have secured all the instrument purported to convey to him, and is not in position to invoke the rules for the protection of innocent purchasers. If the deed is a quitclaim, transferring a chance of title, as distinguished from a conveyance of the land, the judgment is correct. If the deed conveys land as distinguished from a mere chance of title, the judgment should be reversed and rendered in behalf of plaintiff in error for so much of the land as is claimed by him.

[3] The deed, in apt language, conveys the south half and the northeast quarter of the William Lakey league. It undertakes to convey all the title, interest, and estate which the grantors had in the William Lakey league, and then defines what that title, interest, and estate was. Eliminating unessential parts, the description of the property conveyed is:

"All of the title, interest, and estate of ourselves * * * in and to the * * * tract * * * of land situated in the * * * county of San Augustine, on a stream called the Ayish Bayou, * * * and known as the headright * * * of William Lakey, * * * namely, the lower or,southern half of said league of land, and the northeastern quarter of said land, containing thirty-three hundred and twenty-one acres, more or less."

Still further eliminating unnecessary words, the description would be:

"All the estate of ourselves in the headright of William Lakey, viz. the southern half and northeastern quarter."

The language is not that now ordinarily used, and doubtless arises from the adaptation of the phraseology of the deed under which Huling held. That it includes two words, "title" and "interest," which ·are frequently used· in quitclaim deeds, is not more significant than . the omission of the words "right" and "claim" in connection with which they usually appear, and is less suggestive than the absence of the word "quitclaim,": which is ordinarily the distinctive verb when a "chance of title" is transferred. But it is unprofitable to consider difficulties that do not exist. The meaning of the language is clear. If there were ambiguity in the description, and doubt whether land was intended to be conveyed, reference would be made to the habendum clause, where, instead of using a generalization, as "premises," the language is:

"The said thirty-three hundred and twenty-one acres of land as herein set forth, namely the lower half and northeastern quarter of said Lakey league."

Again, the general warranty binds the grantors to "defend said land."

The judgment of the lower court is reversed, and the cause remanded for judgment consistent herewith.