# Chilton v. Bell County Coke and Improvement Company.

### (Decided May 20, 1913.)

## Appeal from Bell Circuit Court.

1. Coroporations—When MMinority Stockholders May Maintain Action.—Minority stockholders may maintain an action to right a wrong done the company without requesting the directors to sue when a majority of the directors are interested in the wrong and hostile to an attempt to correct it, so that a request to them would be unavailing.

2. Corporations—Quorum—When Director Cannot be Counted to Constitute.—A director of a corporation cannot be counted to constitute a quorum in accepting a deed from himself to the company.

3. Corporations—Corporate Articles—Construction.—Where from

the beginning all the parties in interest acted upon a certain construction of the corporate articles, and such construction is within the fair meaning of the language of the instrument, the court will adopt it.

4. Interest—When Will Not be Allowed On Purchase Money—Payment When Deed Made.—Interest will not be allowed on purchase money where the purchase money was to be paid when the deed was made, and from the record no interest appears to have been claimed or allowed before the deed was made.

5. Corporations—Accounts of President—Settlement of.—[Where there has been no meeting of the directors for five years and the president of the company has had charge of the assets, upon the petition of the stockholders, the court should make a settlement of his accounts.

J. W. ALCORN and METCALF & JEFFRIES for appellant.

LOGAN, MANNING & BABBAGE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

In the year 1890 Judge Vincent Boreing owned one thousand acres of land near Pineville. He and some of his associates conceived the idea of organizing a corporation which should take over this land; lay out an addition to the town of Pineville upon it, and sell it out, so far as it was suitable, for town purposes, holding the remainder for mining and other purposes. Thereupon, on February 15, 1890, they organized a corporation known as the Bell County Coke and Improvement Company, which was incorporated under the general statutes of the State then in force. The 4th, 5th, and 7th sections of the articles of incorporation are as follows:

"The authorized capital stock of the corporation shall be four hundred thousand dollars ($400,000), to be issued in shares of one hundred dollars ($100) each, of which capital stock two hundred and seventy-five thousand dollars ($275,000) shall be fully paid up by the conveyance to this corporation of about one thousand acres of mineral and bottom lands adjoining West Pineville, in Bell County, Kentucky, and when said lands are conveyed to and accepted by this corporation the said amount of stock shall be issued fully paid up and nonassessable for any purpose. The remaining capital stock as hereby authorized may be issued at such times and upon such conditions as the Board of Directors may order, and the corporation may sell all or any part of its

said remaining capital stock at a price not less than twenty-five dollars ($25) per share, and when issued the stock shall also be fully paid up and non-assessable, and no liability shall attach to any stockholder by reason of his stock having been sold or purchased at less than its par value.

"5. The affairs of the corporation shall be conducted by a board of seven directors, who shall be elected annually by the stockholders, upon the second Tuesday of each January, and hold their offices for one year, or until their successors are elected and qualified. The board of directors shall elect from its members a president, vice-president, and a secretary and treasurer, and may appoint and supply such other officers and agents as may be or become necessary for the transaction of the business of the corporation. The board of directors for the ensuing year, ending on the second Tuesday in January, 1891, shall be composed of the following named incorporators: Vincent Boreing, J. T. Richey, M. J. Moss, J. A. Craft, W. G. Welch, J. S. Hughes, and R. C. Ford.

"7. The greatest amount of indebtedness or liability to which the corporation may subject itself shall be twenty-five thousand dollars ($25,000)."

On the same day, at a meeting of the board of directors, the following action was taken:

"The following officers elected: President, V. Boreing; Vice-President, J. T. Richey; Secretary and Treasurer, R. C. Ford.

"The president appointed a committee of one to employ a competent civil engineer to lay off town lots on the property belonging to the said corporation and to have maps of same published. The said town to be called 'Mt. Vincent Addition.' "

"The secretary ordered to make call for fifty percentum of the capital stock subscribed, to be paid by 25th February, 1890."

At the next meeting of the board of directors, on February 28, this action was taken:

"On motion W. G. Welch was appointed acting secretary.

"On motion it was ordered that 95 per cent of the proceeds of the first call for fifty per cent of the stock subscription be paid by the treasurer to Vincent Boreing, upon the purchase from him of one thousand acres of

land near Pineville, as soon as the committee, above appointed, are satisfied of the title to said lands, five per cent being retained for expense of books, plats, maps, etc."

After this, from time to time, there were meetings of the board looking to the selling of lots and making other arrangements to that end. At a meeting of the board of directors on March 25, 1890, this action was taken:

"On motion it is ordered that the treasurer be directed to pay over to Vincent Boreing all money received by him to an amount not to exceed $55,000, this being for purchase price of 1,000 acres of land to be deeded by said Boreing to the company, the treasurer retaining 5 per cent amount received by him for incidental expenses."

At a meeting of the board of directors on May 3, 1890, there being present three directors besides Boreing, who was the president, this action was taken:

"Motion J. A. Craft, it was ordered by said board that the company accept from Vincent Boreing a deed for the town property and that said Boreing have further time to make deed to the rest of the property."

At a meeting of the stockholders held on January 13, 1891, Vincent Boreing held 750 shares of stock. and at a meeting of the stockholders on January 12, 1892, he held 1050 shares. At a meeting of the stockholders on November 22, 1902, this action was taken:

"V. Boreing in settlement of controversy with McGuire of Louisville, Ky., (tobacconist) sold to said McGuire, eighty-three (83) acres that he (Boreing) otherwise intended to convey to this (the Bell County Coke & Improvement Co.) as part of the one thousand acres sold them by title bond of date. It is ordered, on motion of J. S. Hocker that said Boreing's proposition to let company have 83 acres of land owned by him adjoining the land held by this company, in lieu of said 83 acres heretofore transferred to said McGuire, be and same is accepted."

At a meeting of the stockholders on January 13, 1903, at which Boreing held 1111 shares of stock, the following action was taken by the stockholders:

"On a careful examination of the records and books of this company, it appears that 1345 shares of stock of this company have been fully paid and 794 shares of stock of the company partially paid. The amount paid in the last named 794 shares being 7652.5, and it further

appearing that 2139 shares of stock have been fully and partially paid, it is therefore ordered in accordance with contract made with V. Boreing that when he makes to this company (The Bell Co. Coke and Improvement Co.) a deed of general warranty for the one thousand acres of land referred to in his title bond and in these minutes, the said company shall issue to him (V. Boreing) stock in said company to the amount of 611 shares."

Upon adjournment of that stockholders' meeting, there was a meeting of the directors, at which Boreing and three other directors, were present, and at this meeting of the directors the following action was taken:

"Vincent Boreing, Pres., executes and tenders a deed of conveyance to the Bell County Coke and Improvement Co. for the one thousand acres of land described in the title bond executed by him on March 25th, 1890, as amended by a ratification of the stockholders on the 22nd day of November, 1902, on page 24 of the minute book of the Bell County Coke and Improvement Company, as per a calculation made by the stockholders of said company on said date (Nov. 22, 1902), which shows a balance of purchase money due said V. Boreing of fifteen thousand eight hundred and eighty ($15,880) dollars, with interest from 25th day of March, 1890, at six per cent per annum until paid, which is a lien upon the property described and conveyed in the deed aforesaid, and said deed is accepted by the board of directors of said company, subject to a surcharge and full settlement hereafter to be made between the said Boreing and the company aforesaid."

The two deeds referred to in the above orders made by the board of directors were duly recorded, the first on May 6, 1890, and the other on January 17, 1903. Judge Boreing was president of the company from the time it was organized until his death in September, 1903. This suit was filed on June 8, 1907, by J. E. Childers, J. F. Peyton and J. B. Gilkerson, suing for themselves and other stockholders in the company, charging in effect that John R. Boreing is the executor of his father, Vincent Boreing, and since his father's death had been the president of the company; that he holds a part of the stock which his father held and that a majority of the other directors hold a part of this stock, the majority of the directors being interested in the estate of Judge Boreing, and so unwilling to take any action against the estate. They alleged that the two deeds above referred to were

accepted from Vincent Boreing at meetings of the directors when only three directors beside himself were present and when, as he could not vote thereon, there was no quorum of the directors, and the action taken by the directors was void for want of a quorum; that when the stockholders directed that 611 shares of stock should be issued to Vincent Boreing, on November 22, 1902, they contemplated that these 611 shares would complete the payment to Vincent Boreing for the land and that nothing further was owing to him. They also charged that the 83 acres which he conveyed to the company in lieu of the 83 acres which he had sold, was worth one-tenth as much as the land he sold; that the stockholders agreed to the substitution because of his wrongful representations to them that the two parcels were of like quality and value; that by the contract with Boreing, in which the 1,000 acres of land was taken over by the corporation, Boreing was to be paid in stock for the land, and not in money; and that he was not to be paid anything until he tendered to the corporation a good deed; and that he was in no event entitled to any interest on any balance of the consideration until the deed was made to the corporation. They alleged that Vincent Boreing, as president, had received certain moneys from the rents of the property and from things sold off the land; that John R. Boreing, as president, had also received like sums, and there had been no settlement with either of them. They prayed a settlement of their accounts, and an adjustment of the rights of the company with Vincent Boreing and his estate. An answer was filed by the defendants. The issue was made up; proof was taken and on final hearing, the circuit court dismissed the plaintiff's petition. The plaintiffs appeal.

1. *As to the right of the plaintiffs to maintain the action.* The rule is that stockholders may maintain an action like this, (1) if it appears that the corporate officers have, after request, refused to take any action; or (2) that they are so concerned in the wrong sought to be redressed or hostile to any attempt to vindicate the rights of the corporation that it is reasonably certain that a request to proceed would be unavailing. (Northern Trust Co. v. Snyder, 90 Am. St. Rep., 867; Wallace v. Lincoln's Savings Bank, 89 Tenn., 630; Botts v. Simpsonville, etc., Turnpike Co., 88 Ky., 54.) Four of the seven directors are interested in or represent the estate of

Judge Boreing. The object of the suit is hostile to that estate, and it would be idle to request these four directors, including the preseident of the company, to take action hostile to the estate. In addition to this, there has been no meeting of the directors since the year 1904. We, therefore, conclude that if a wrong has been done the corporation, the minority stockholders may maintain an action to correct the wrong. (Pittsburg, etc., R. R. Co. v. Dodd, 115 Ky., 176).

2. *As to the deeds accepted by the directors.* At each of the meetings of the directors at which these deeds were accepted by the corporation, only three of the directors other than Judge Boreing were present. Three of the directors were not a majority, as there were seven directors. An officer of a corporation cannot make a contract for the corporation with himself, and he is equally without power to act for the corporation in a meeting of directors to make a contract with himself. Thus in Jones v. Morrison, 31 Minn., 140, it was held that a director can not properly act on or form part of a quorum to act on a proposition to increase his own compensation. In Van Hook v. Summerville Mfg. Co., 5 N. J. Eq., 37, it was held that one director cannot with two others constitute a quorum to vote a mortgage from the company to himself, there being five directors of the company. To same effect see Butts v. Wood, 37 N. Y., 317; Curtin v. Salmon River, etc., Co., 130 Calif., 345; Beach v. Miller, 17 Am. St. Rep., 300 and note; Starr Mills v. Bailey, 140 Ky., 194. We, therefore, conclude that the acceptance of these deeds for the corporation by the directors did not bind the corporation.

3. *As to the meaning of the corporate articles.* It is specified in section 4 that the authorized capital stock shall be $400,000 to be issued in shares of $100 each, of which capital $275,000 shall be fully paid up by the conveyance to the corporation of the lands, and when the lands are conveyed this amount of stock shall be issued fully paid up and non-assessable for any purpose. We do not understand that Judge Boreing was to take the stock and make conveyance of the land. Certainly the subsequent action of the directors and the stockholders show that no one so understood the articles; for at a later date the remaining stock amounting to $125,000 was cancelled. The corporation was carrying on a considerable business, and this would have left it without any business

capital if the whole of the $275,000 of stock was to go in the land. It is evident that the corporation was to pay Judge Boreing $55,000 for the land, which was 20 per cent of $275,000, and that the remaining 5 per cent, the stock being sold in fact at $25 a share, was to be used by the company. It does not appear that there was any violation of the 7th section of the articles in creating an indebtedness beyond $25,000, and it would seem that the 611 shares of stock were turned over to Judge Boreing by the stockholders to keep the indebtedness within the limits of the corporate articles. Part of the land was in litigation and he was not ready to make a deed. Some of the stock had not been sold and some that had been sold had not been paid for in full. From time to time payments were made to Judge Boreing on the land in anticipation that he would make a deed when the company was ready for it. The transactions appear to have been within the corporate powers of the company.

4. *As to the balance due Boreing.* We do not understand from the action of the stockholders' meeting on January 13, 1903, that the 611 shares of stock were to be issued to Boreing in settlement of the balance due him. Two thousand one hundred and thirty-nine shares of stock which had been fully or partially paid for when added to the 611 shares directed to be issued to Boreing, make 2,750 shares, which was the total amount of stock that was to represent the land. But a part of the 2,139 shares of stock had not been paid for, and as Boreing only received $20 out of every $25 paid in for stock, it is clear that there was a balance due Boreing. Taking that resolution in connection with the other proceedings of the stockholders and the undisputed proof in the case, including the calculation upon which that resolution was based, we conclude that Boreing had been paid no part of the proceeds of the 794 shares which had not been paid up in full, and that therefore there was $15,880 coming to him at that time. The calculation above referred to which is filed by the secretary of the company with his deposition shows this, and on the whole record we conclude that this is the truth of the matter.

Under the articles of incorporation it was provided that "when said lands are conveyed to and accepted by this corporation the said amount of stock shall be issued fully paid up and non-assessable for any purpose." By the action of the directors on March 25, 1890, the treas-

urer was directed to pay over to Vincent Boreing all money received by him to an amount not to exceed $55,000, "this being for purchase price for 1,000 acres of land to be needed by said Boreing to the company." The calculation on which the action of the stockholders on January 13, 1903, was taken shows no counting of interest and in all the previous proceedings, there is nothing showing that interest was claimed or allowed. Upon this record which is all we have Boreing was not entitled to interest on the purchase money before he tendered the company a deed. His delay in tendering the deed was due to litigation over the land between him and others, and finally 83 acres of other land was substituted for 83 acres of the land which the company had bought. There is nothing in the record to warrant us in disturbing the settlement made between Judge Boreing and the other stockholders as to this 83 acres, but on the facts shown he was not entitled to interest on the balance due him from March 25, 1890. He should be allowed interest only from January 13, 1903, when he made it the deed, and to the extent that this deed secures to him interest on the money previous to this date, it should be canceled.

5. *As to a settlement.* It appears from the record that no settlement was made between the company and Judge Boreing before his death, and the deed is made "subject to a surcharge and full settlement hereafter to be made between said Boreing and the company aforesaid." It also appears that John R. Boreing as president of the Company has had charge of the property for a number of years; that he has made no settlement, and that there has been no meeting of the board of directors since 1904. No ground is shown for the appointment of a receiver, or for taking the property out of the hands of the president of the company, but on the facts shown, the court should refer the case to a commissioner to make a settlement with Judge Boreing who held the property of the company for many years before his death and with John R. Boreing, who has held it in like manner since he became president.

Judgment reversed and cause remanded for further proceedings consistent herewith.