## Enterprise Foundry & Machine Works v. Miners' Elkhorn Coal Company, et al.

(Decided December 9, 1931.)

WHEELER & WHEELER for appellant.

KIRK & WELLS for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Enterprise Foundry & Machine Works on January 31, 1923, was a corporation with its residence at Bristol, Tenn.-Va., engaged in selling completely equiped mining cars. On the same day the Miners' Elkhorn Coal Company was a corporation engaged in the mining of coal with its chief office at Paintsville, Ky.

On January 31, 1923, the Enterprise Foundry & Machine Works, by written contract executed and delivered by it to, and accepted by, the Miners Elkhorn Coal Company, sold and agreed to deliver to it 27 mine cars complete, f. o. b. at Bristol, Tenn., at $94.51, per car, amounting to $2,551.77, which amount was paid, less $725.88, for which notes were executed and delivered by the Miners' Elkhorn Coal Company to the Enterprise Foundry & Machine Works; one for $50, another for $50, and a third note for $725.75, dated July 10, 1924. This provision was in the written contract between the parties:

> "The title and ownership of the property described and specified herein shall not pass from the company until all payments regular or deferred, shall have been made fully in cash. Notes given or renewals thereof shall not be held to be payments until the notes themselves are actually paid. In case of default in any of the payments provided for above, the Company may repossess itself of the herein mentioned property, wherever found, and shall not be liable in any action of law on the part of the Purchaser for such reclamation of its property, nor for the repayment of any money or moneys, which may have been paid by the Purchaser in part payment for the said property, except as by statute provided."

The Enterprise Foundry & Machine Works delivered the cars as it agreed and endeavored to collect the balance due it. Failing to do so, it instituted this action to recover same and to enforce a lien on the 27 cars. Thereafter it sold its business and assets to the Enterprise

Wheel & Car Corporation. By a proper pleading it was made a party with the permission to prosecute the action.

For its cause of action the appellant alleged in its petition the usual and necessary facts constituting its cause of action. In doing so it set out haec verba the contract between the Enterprise Foundry & Machine Works and the Miners' Elkhorn Coal Company. It further alleged that the Miners' Elkhorn Coal Company by its board of directors, Z. Wells, F. B. Preston, W. L. Preston, John Dills, and Mose Rice, with knowledge on their part of the existence of its written contract with their corporation, in March, 1927, executed and delivered to themselves as individuals a mortgage on the assets of the Miners' Elkhorn Coal Company, including the 27 cars, to secure themselves as indorsers on certain notes of their corporation, aggregating $7,000; that the mortgage was fradulently and collusively executed by them to hinder and to prevent the Enterprise Foundry & Machine Works in the collection of its debts against their corporation; that in pursuance to this arrangement they caused to be filed in the Johnson circuit court an action wherein G. B. Rice, F. B. Rice, Z. Wells, Mose Rice, F. B. Preston, W. L. Preston, and John B. Dills were plaintiffs and the Miners' Elkhorn Coal Company was the defendant; that judgment therein was procured by the fraud and collusion of the parties to the action; the property of the Miners' Elkhorn Coal Company was sold by the master commission of the court under a judgment therein, and the property purchased by E. Wells for their use and benefit; that thereafter it was sold by them to the Northeastern Coal Company, and the proceeds were applied by them to the debts of the corporation for which they were liable.

The Miners' Elkhorn Coal Company, Z. Wells, F. B. Preston, W. L. Preston, John Dills, and Mose Rice, filed their answer thereto and offered to file an amended answer. To its filing the appellant objected. The court sustained its objection and refused to permit the amended answer to be filed. It was not asked by them to be made a part of the record by an order of court, nor was it so made a part of the record.

On submission, on the pleadings and evidence, a judgment was rendered against the Miners' Elkhorn Coal Company and F. B. Preston for $785.25. The petition was dismissed as to Wells, W. L. Preston, John

Dills, Mose Rice, and the Northeastern Coal Company. It was further adjudged that the appellant had no lien on the 27 mine cars. To the judgment dismissing the petition as to them and as to so much of it as adjudged that it had no lien on the cars, the appellant excepted and was granted an appeal which is now being prosecuted.

A major portion of the testimony in the case is the same as that which was introduced in the case of H. B. Rice & Co. v. Miners' Elkhorn Coal Co. et al., recently decided by this court and reported in 234 Ky. 580, 28 S. W. (2d) 783. Many of the facts and some of the questions presented for consideration in the present case are stated in that one. It is necessary for a consideration of the present case to state the additional facts and questions herein, which were not involved in it.

At the time the mortgage of the corporation on its property was executed and delivered by virtue of an order of the board of directors to themselves, in addition to being a director, F. B. Preston was president, general manager, and treasurer of the corporation. The Miners' Elkhorn Coal Company was at that time indebted to the Paintsville National Bank in the sum of $7,000, $2,500 of which had been owing by the corporation for about five months, $3,000 about two months, and $500 for an indefinite time. The directors were indorsers of the notes of the Miners' Elkhorn Coal Company to the Paintsville Bank, except the $500 note. It was indorsed by F. B. Preston and W. L. Preston. When these three notes matured the directors executed to the bank their personal notes and left them with it covering the amount of the corporation's notes. Their personal notes were not dated, but after they were executed and delivered to the bank, they were merely attached to the three notes of the Miners' Elkhorn Coal Company. At the date of the execution of the mortgage the written contract between the two corporations for the sale of the 27 cars was neither acknowledged nor recorded.

The directors are here insisting that at the time the corporation executed and delivered the mortgage, they had no knowledge or information of the existence of applicant's written contract or its terms, between the Enterprise Foundry & Machine Works and the Miners' Elkhorn Coal Company, and that they are protected against the contract by the provisions of section 496, Ky. Statutes. They insist that at the date of the mortgage the assets of the corporation, estimated at a reasonable

market value, were $60,000 and that its indebtedness was $24,000. It is disclosed by the evidence that before the mortgage was executed and delivered the president, general manager, and treasurer of the corporation reported to the board of directors the indebtedness of the corporation. From his testimony it appears that they had knowledge of the amount of the debts owing by the corporation, even if they had no actual knowledge of the names and addresses of the creditors, or of the amounts or the nature of their respective debts. It is not disputed that the 27 cars were purchased by the president, general manager, and treasurer of the corporation by the written contract in evidence, or that they were used by it in its operation of its mine. Of this latter fact it is admitted the directors had actual knowledge. It is shown that the board of directors did not formally authorize its president, general manager, and treasurer to contract for, or to purchase, the cars; but his general authority and the manner and extent of the exercise thereof by him were known to, and its exercise by him was acquiesced in by, the stockholders and members of the board of directors. A corporation must act through its officers and agents. The board of directors is the central power which authorizes the executive agents to enter into contracts and embark upon new business ventures. But where an officer of a corporation is held out by it as authorized to represent the corporation in any particular line of its endeavor, such as purchasing equipment and supplies, that corporation is bound by his acts even though the board of directors takes no specific action upon the matter and enters no formal order authorizing such officer to act for the corporation in that particular matter. So likewise it is bound when it permits its official in the regular course of business to make contracts and to carry on certain work without objection from its board of directors and thereafaer receives and appropriates the same and recognizes such as its property. Hall-Watson Furniture Co. v. Cumberland Tel. & Telg. Co., 203 Ky. 90, 261 S. W. 883; Commonwealth v. Mehler & Eckstenkemper, 183 Ky. 11, 208 S. W. 13; Union Motor Co. v. Taylor, 206 Ky. 398, 267 S. W. 170.

In Hall-Watson Furniture Co. v. Cumberland Tel. & Telg. Co., supra, the court said: "It is nevertheless true that in practice a corporation may, and often does, bind itself by the actions of its executive officers and agents

without formal grant of power so to do, and this court uniformly has recognized this generally accepted principle of law." Bell & Coggleshall Co. v. Ky. Glass-Works Co., 106 Ky. 7, 50 S. W. 2, 1092, 51 S. W. 180, 20 Ky. Law. Rep. 1684, 21 Ky. Law Rep. 133, 156; Star Mills Co. v. Bailey, 140 Ky. 197, 130 S. W. 1077, 140 Am. St. Rep. 370; Nelson-Bethel Clothing Co. v. Pitts, 141 Ky. 242, 132 S. W. 430; Elk Valley Coal Co. v. Thompson, 150 Ky. 614, 150 S. W. 817; Caddy Oil Co. v. Sommer, 186 Ky. 843, 218 S. W. 288; Commonwealth v. Mehler & Eckstenkemper, supra; Farmers' & Merchants' Bank v. Wisdom, 226 Ky. 179, 10 S. W. (2d) 846.

Nothing is better settled than that a corporation may be bound by its officers or agents acting in its regular course of business, even though no specific authority be granted by the board of directors, if by subsequent action the board ratifies the acts of the officers or agents or acquesces therein (by reason of its receiving and appropriating to its use the benefits or advantages arising from the contractual relation. First National Bank v. Bryan, 215 Ky. 338, 285 S. W. 239. The statement of these general principles and the authorities cited are sufficient consideration of the defense that Preston, the president, general manager, and treasurer, was without authority of the board of directors to purchase the 27 cars and to enter into a written contract therefor with the Enterprise Foundry & Machine Works. In his effort to escape the effect of the stipulation in the written contract, the president, general manager, and treasurer claims he did not observe at the time of entering into it that the quoted provision was therein. He cannot be permitted to say that he did not read it when he signed it, or that he did not know what it contained; there being no claim by him that it was obtained by fraud either actual or constructive. He and his corporation must stand by the written contract. Pickrell & Craig Co. v. Bollinger & Babbage Co., 204 Ky. 314, 264 S. W. 737; Spotswood & Son v. Lafayette-Phoenix Garage, 207 Ky. 477, 269 S. W. 514; Ross v. Oliver Bros., Etc., 152 Ky. 437, 153 S. W. 756; Morgan v. Mengel Co., 195 Ky. 545, 242 S. W. 860.

In principle the knowledge of an officer of the corporation is imputed to the corporation. Its president, general manager, and treasurer purchased the 27 cars from the Enterprise Foundry & Machine Works, ac-

cepted and retained them by virtue of the written contract entered into by appellant and his corporation; therefore, his knowledge of the contents of the writing as a matter of law is imputed to his corporation. Louisville & Nashville Railroad Co. v. Central Ky. Traction Co., 147 Ky. 513, 144 S. W. 739, Ann. Cas. 1915A, 857; Blue Grass Coal Corporation v. Combs, 168 Ky. 437, 182 S. W. 207; Union Gas & Oil Co. v. Wright, 200 Ky. 791, 255 S. W. 697; Arnett v. Stephens, 199 Ky. 730, 251 S. W. 947.

Z. Wells, F. B. Preston, W. L. Preston, John Dills, and Mose Rice at the date of the execution and delivery of the mortgage by the corporation to them, on its property, including the 27 cars, constituted the board of directors of the corporation. The corporation being an artificial person, it could only act by and through its board of directors. Their acts as directors were the acts of the corporation. Star Mills Co. v. Bailey, supra. A corporation, if the sale or mortgage is bona fide and for a valuable consideration paid to it, may sell or mortgage its property and the purchaser or the mortgagee will take the property free from any claims of the creditors of the corporation. The same right to mortgage or sell belongs to a corporation as belongs to a natural person. Moss Jellico Coal Co. v. Jones, 190 Ky. 53, 226 S. W. 121. But when the directors themselves, who must necessarily act for the corporation, mortgage or sell the property of the corporation to themselves, or one of their members, a different rule obtains from that where the property is sold to a third person in good faith and for a valuable consideration. When the directors deal with themselves in such a transaction, they are acting in a dual capacity, i. e., representing themselves individually and as trustees, as it were, of the corporation. The presumption is unfavorable to them, and upon their acts being called in question by the corporation, or its creditors, the burden is imposed upon them to show by a preponderance of proof that they acted bona fide and that the corporation got the benefit of their act. Star Mills Co. v. Bailey, supra; Reinhardt v. Owensboro Planing Mill Co., 185 Ky. 600, 215 S. W. 523, 524; Ecker v. Ky. Refining Co., 144 Ky. 264, 138 S. W. 264; Chilton v. Bell County Coke & Improvement Co., 153 Ky. 775, 156 S. W. 889, 891; F. T. Gunther Grocery Co. v. Hazel, 179 Ky. 775, 201 S. W. 336; Arnett v. Stephens, supra; Covington

& L. R. Co. v. Bowler's Heirs, 9 Bush 468; Walker v. Carter, 208 Ky. 197, 270 S. W. 770; Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133, 130 S. W. 965, 31 L. R. A. (N. S.) 169.

In Chilton v. Bell County Coke & Improvement Co., supra, it was written:

"An officer of a corporation cannot make a contract for the corporation with himself, and he is equally without power to act for the corporation in a meeting of directors to make a contract with himself. Thus in Jones v. Morrison, 31 Minn. 140, 16 N. W. 854, it was held that a director cannot properly act on, or from part of a quorum to act on a proposition to increase his own compensation. In Van Hook v. Somerville Man'fg. Co., 5 N. J. Eq. 137 it was held that one director cannot, with two others, constitute a quorum to vote a mortgage from the company to himself, there being five directors of the company. To same effect, see Butts v. Wood, 37 N. Y. 317; Curtin v. Salmon River, Etc., Co., 130 Cal. 345, 62 P. 552, 80 Am. St. Rep. 132. . . . We therefore conclude that the acceptance of these deeds for the corporation by the directors did not bind the corporation."

In the United Society of Shakers v. Underwood, 9 Bush 609, 15 Am. Rep. 831, it was said:

"This doctrine was recognized by this court in the case of the Lexington & Ohio R. R. Company v. Bridges (7 B. Mon. 556) [46 Am. Dec. 528], in which case it was held that the directors of that corporation by accepting their positions assumed the discharge of certain duties not only to the company, but to persons dealing with it, and that if they misappropriated the funds intrusted to their control, and a creditor was damaged by the act, he had a right of action against them for the injury resulting from their illegal conduct. Whenever there exists a legal duty to perform or omit to do an act, the law will imply a promise by the person upon whom the duty rests that he will discharge it, and between him and all persons having the legal right to remand its performance a privity of contract exists. (Chitty on Contracts; 1 Parsons on Contracts.)"

The rule that a trustee cannot buy at his own sale embraces sales both direct and indirect purchases, and applies whether a sale is private or under a decree, and whenever the purchaser is charged with duty inconsistent with the character of the purchase. Walker v. Carter, supra. A contrary rule applies to a mere stockholder. Ecker v. Ky. Refining Co., supra.

F. B. Preston, as president, general manager, and director and treasurer of the corporation, having entered into a written contract with the Enterprise Foundry & Machine Works for the purchase of the 27 cars, a judgment was correctly entered against him for the appellant's debt. The other directors, under the rules enunciated herein in the execution by themselves, for the corporation, to themselves, of the mortgage on the 27 cars under the proven facts, cannot shield themselves as innocent purchasers for value within the meaning of section 496, Ky. Statutes. His knowledge of the circumstances under which the appellant's contract with their corporation was executed and its contents is imputed to his codirectors.

It is a general rule universally recognized that whatever knowledge a director had, or ought to have, officially, he has, or will be conclusively presumed to have, as an individual. Moore on Banks & Banking, sec. 137; United Society of Shakers v. Underwood, supra; Dunn's Adm'r v. Kyle's Ex'r, 14 Bush 134; Exchange Bank of Kentucky v. Trimble, 108 Ky. 230, 56 S. W. 156, 21 Ky. Law Rep. 1681; Jones, Assignee, v. Johnson, Etc., 10 Bush 649; Jones, Assignee, v. Johnson, 86 Ky. 530, 6 S. W. 582, 9 Ky. Law Rep. 789; Savings Bank of Louisville's Assignee v. Caperton, 87 Ky. 306, 8 S. W. 885, 10 Ky. Law Rep. 201, 12 Am. St. Rep. 488; Gillet v. Phillips, 13 N. Y. 114; Merchants' Bank v. Rudolf, 5 Neb. 527; Lyman v. Bank of U. S., 12 How. 225, 13 L. Ed. 965; Tate v. Bates, 118 N. C. 287, 24 S. E. 482, 54 Am. St. Rep. 719; McCarty v. Kepreta, 24 N. D. 395, 139 N. W. 992, 48 L. R. A. (N. S.) 65, Ann. Cas. 1915A, 834. It is not denied in the pleadings that the members of the board of directors had actual knowledge from its president, general manager, and treasurer that the corporation at the time it, by and through them, executed to themselves its mortgage on all of its property, including the 27 cars, that the corporation was indebted to divers persons in the aggregate of $24,000; nor is it disputed that they had

knowledge of the fact that the corporation had purchased and was using in its business the 27 cars. By the exercise of ordinary care, even if the members of the board had no actual knowledge of the written contract and its provisions by virtue of which the corporation acquired title, possession, and use of the 27 cars, they could have ascertained and learned of the existence of the corporation's indebtedness to the Enterprise Foundry & Machine Works as well as the terms and provisions of the written contract between it and their corporation. They must not only exercise ordinary care to learn the affairs of the corporation, but act in the most perfect good faith.

In Reinhardt v. Owensboro Planing Mill Co., supra, this court stated the good faith rule in this language:

"The relations of officers and directors in this respect are more closely scrutinized than those of mere stockholders, as the former are charged with the management and conduct of the corporation's business. Directors are bound to exercise nothing short of the uberrima fides of the civil law. They must not in any degree allow their official conduct to be swayed by their private interest or welfare, unless that interest be one they have in the good of the company in common with all the stockholders. They must not profit at the expense of the others. This duty results from the nature of their employment or position, and without any stipulation to that effect. Their private interest must yield to the official duty whenever those interests are conflicting. One cannot faithfully or fairly serve two masters or interests with diverse or conflicting claims. The trust imposed upon a director as such must not be exercised for his own private exclusive benefit, nor for the benefit of third persons."

By the good-faith rule and the rule stated in United Society of Shakers v. Underwood and McCarty v. Kepreta, and other cases hereinbefore cited, the directors cannot be heard to say that they had no information of things which it was a part of their duty to know. For this reason the knowledge of one officer of a corporation which is imputable to it will also be imputed to the director of the corporation so as to affect him as an individual. Therefore the appellees will not be heard to say that they had no knowledge or information as to the ex-

istence and terms and provisions of the contract of the corporation with the Enterprise Foundry & Machine Works by virtue of which the 27 cars were purchased and owned by it. The contract here involved antedates the Uniform Sales Act. It is therefore unaffected by it. Contracts with similar provisions were construed by this court in Baldwin, Etc., v. Crow, 9 Ky. Law Rep. 60; Welch v. National Cash Register Co., 103 Ky. 30, 44 S. W. 124, 19 Ky. Law Rep. 1664; Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205; Townsend v. Frazee, 54 S. W. 722, 21 Ky. Law Rep. 1183; and in many other subsequent cases, wherein it was held that such a contract should be regarded as "an absolute sale and mortgage back," and by virtue thereof the seller was entitled to a lien on the property covered by it. The appellees having accepted from their corporation the mortgage on the 27 cars covered by appellant's contract with their corporation with knowledge to one of them, and imputed notice to his co-directors, of its existence and terms and provisions, it follows that it is our view that the trial court erred in holding that they were purchasers in good faith for value and without notice. The sale of the property by the judgment of the court and the purchase thereof by the directors at such sale was in itself a conversion of the 27 cars, in so far as appellant was concerned. The purchase by them at the commissioner's sale of the property and subsequently selling it and applying it to the payment of the debts for which they were individually liable was in equity a complete conversion by them as trustees to their own use of the 27 cars as against the appellant.

One who takes mortgaged personal property not his own and converts it to his own use and benefit with knowledge, either actual, constructive, or imputed to him as trustee, of the existence of a mortgage or lien on it without the consent of the mortgagee or lienholder is liable to him for its reasonable value at the time it was taken. Ruby v. Cox, Etc., 191 Ky. 162, 229 S. W. 127; Hughes v. Graves, 1 Litt. 317; Osborn v. Taylor, 9 Ky. Law Rep. 495; Cooper v. McKee, 121 Ky. 287, 89 S. W. 203, 28 Ky. Law Rep. 270.

The appellees by reason of so converting to their own use the 27 cars are liable to the appellant for the reasonable value thereof at the time they were taken and so converted.

Wherefore the judgment is reversed, and cause remanded for proceedings consistent with this opinion.