**750**

KOEHRING COMPANY, a Wisconsin Corporation, Plaintiff,

v.

Kenneth TYLER, Defendant.

Civ. A. No. 956.

United States District Court
W. D. Kentucky,
Owensboro.

Oct. 2, 1962.

Sandidge, Holbrook, Craig & Hager, Owensboro, Ky., for plaintiff.

L. B. Lawton, Henderson, Ky., for defendant.

BROOKS, Chief Judge.

This action was ordered submitted on the record and the briefs of the parties after a trial to the Court. The findings of fact rendered from the bench at the conclusion of the trial, plus an additional finding (number 7, infra) upon which the Court reserved a ruling, are as follows:

## FINDINGS OF FACT

1. The plaintiff, Koehring Company, is the successor to Hydraulic Press Manufacturing Company, an Ohio corporation, and is the continuing corporation and the successor to all of the assets and liabilities of Hydraulic Press Manufacturing Company.

2. On May 17, 1955, the defendant, Kenneth Tyler, as president of Plastic Tool and Engineering Corporation, a Kentucky corporation, executed and caused to be delivered to Hydraulic Press Manufacturing Company a conditional sales contract covering a plastic injection molding machine and also executed and

caused to be delivered to Hydraulic Press Manufacturing Company a promissory note in the amount of $36,000, bearing interest at 6% per annum, the said note being secured by the above mentioned conditional sales contract and the said note being due and payable on or before July 17, 1955. The above conditional sales contract pledged as security and retained the title to a Model 400–P–48A plastic injection molding machine and operating system to secure the above mentioned note, and the said note and conditional sales contract are the same as those introduced in evidence by plaintiff.

3. The above conditional sales contract, which was executed by the defendant, stated that the principal place of business of Plastic Tool and Engineering Corporation was Central City, Kentucky. The principal place of business of Plastic Tool and Engineering Corporation and its legal residence was Henderson, Kentucky, and this fact was known by the defendant at the time he executed the conditional sales contract.

4. The plaintiff's predecessor caused the conditional sales contract to be recorded in Muhlenberg County, Kentucky, on July 6, 1955, the county in which the security was located. It did not record the conditional sales contract in Henderson County, Kentucky, the legal residence of Plastic Tool and Engineering Corporation. Plastic Tool and Engineering Corporation then defaulted with a balance owing on said note of $19,607.75, and the plaintiff's predecessor became entitled to possession under the terms of the conditional sales contract.

5. Thereafter and on January 6, 1956, the defendant as president of Plastic Tool and Engineering Corporation executed and caused to be delivered to the First National Bank of Henderson, Kentucky, a first mortgage which, among other items, mortgaged the 400–P–48A plastic injection molding machine above referred to. This mortgage contained a covenant as follows:

"Mortgagor warrants that it has good and merchantable title to all of said property and that the same is free and clear of any encumbrances whatsoever."

As an inducement to procure the loan from the First National Bank of Henderson, Kentucky, and its assignee, the Small Business Administration of the United States, the defendant certified to the assets and liabilities of Plastic Tool and Engineering Corporation by certificate dated December 30, 1955, and on which balance sheet there was not listed the note to the plaintiff's predecessor nor the encumbrance on the subject machine.

6. Thereafter, Plastic Tool and Engineering Corporation defaulted on its indebtedness to the First National Bank, which had been assigned to the Small Business Administration, and said mortgagees commenced foreclosure proceedings in the Henderson Circuit Court in File No. 1057. Plaintiff's predecessor received its first notice of the encumbrance created against its property by receipt of a letter from a warning order attorney appointed in this action. This letter was received by the plaintiff's predecessor on or about July 27, 1956. Plaintiff's predecessor then asserted its claim to the subject machine in said action and in the action of United States of America v. Plastic Tool and Engineering Corporation and Hydraulic Press Manufacturing Company, Civil Action No. 722, in the District Court of the United States for the Western District of Kentucky at Owensboro, to which the Henderson Circuit Court action was transferred. As a result of the Federal court action mentioned above and the judgment rendered therein, the plaintiff's predecessor, because of its recording its conditional sales contract in the wrong county, was deprived of its right of possession and interest in the subject machine and has thereby suffered a loss of $19,607.75, the balance owing on the purchase price of the said machine at the time of the default of Plastic Tool and Engineering Corporation.

7. The defendant signed the conditional sales contract and the note which

covers the plastic machine, and he had actual knowledge that the aforesaid conditional sales contract and note were outstanding when he certified to the assets and liabilities of Plastic Tool and Engineering Company for the purpose of procuring the loan from the First National Bank of Henderson, Kentucky and also when he subsequently executed a mortgage on the same property to that bank to secure the loan.

## CONCLUSIONS OF LAW

■ 1. The defendant's legal responsibility in this case must rest upon the Court's finding that, at the time the defendant executed the subsequent mortgage to the First National Bank of Henderson, Kentucky, he had actual knowledge of the existence of the conditional sales contract with plaintiff's predecessor and of the title or lien retained therein by plaintiff's predecessor until the purchase price was paid, although under the circumstances of this case it is concluded that knowledge will be imputed to him individually as a matter of law of the document which he signed and of its content, at least in the absence of any allegation of fraud. Enterprise F. & M. Works v. Miners' Elkh'n Coal Co., 241 Ky. 779, 45 S.W.2d 470. He admits signing some document relating to the purchase of the machine in question but is reluctant to say that the conditional sales contract bears his signature. The Court has found that he did sign it, however, and the following quotation from the Enterprise F. & M. Works case, supra, states the applicable Kentucky law regarding his knowledge of the nature and content of the writing which he signed:

"In his effort to escape the effect of the stipulation in the written contract, the president, general manager, and treasurer claims he did not observe at the time of entering into it that the quoted provision was therein. He cannot be permitted to say that he did not read it when he signed it, or that he did not know what it contained; there being no claim by him that it was obtained by fraud either actual or constructive. He and his corporation must stand by the written contract."

■ 2. The conditional vendee's act of mortgaging the property constituted such a wrongful intermeddling and act of dominion inconsistent with the conditional vendor's rights of ownership as in law amount to a conversion. Enterprise F. & M. Works v. Miners' Elkh'n Coal Co., supra; 78 C.J.S. Sales § 612 (1952); 47 Am.Jur., Sales, § 873 (1943); Annot., 73 A.L.R. 799 (1931) and cases cited therein. The conditional vendee was in default, and by the terms of the conditional sales contract this gave the plaintiff the right to immediate possession. Under the circumstances, mortgaging the same property to a third person denied the plaintiff its right to immediate possession as effectively as if the property had been sold outright or destroyed, and demand is not a condition precedent to the maintenance of the action. 78 C.J.S. Sales § 612, at 396–397.

■ 3. Where, as here, the defendant corporate officer actively participates in the wrongful conversion of another's property, he is personally liable for the tort, notwithstanding the fact that he was acting for the corporation and derived no personal benefit from his acts. Annot., 152 A.L.R. 696, 705 (1944); 14 C.J.S. Chattel Mortgages § 264 (1939); 3 Fletcher, Private Corporations, §§ 1135, 1137, 1140 (perm. ed. rev. repl. 1947); see Ward v. Guthrie, 193 Ky. 76, 234 S.W. 955. And no exceptions to this rule have been found where, as here, the corporate officer had actual knowledge that the converted property did not belong to the corporation for which he was acting. The case of Ward v. Guthrie, supra, cited by defendant, does not announce a contrary rule inasmuch as the elements of knowledge and active participation by the defendant corporate officers were not present in that case and in their pleadings the plaintiffs had waived the tort and sued on an implied contract.

4. Since this action was commenced within five years after the plaintiff received actual notice of the fraudulent conversion of its property, this suit is not barred by the five-year statute of limitations on actions to recover for injury to personal property, K.R.S. 413.-120, even though the action was commenced more than five years after the subsequent mortgage was recorded. Defendant relies on the case of Cogar, etc. v. National Bank of Lancaster, 151 Ky. 470, 152 S.W. 278, where the holder of matured and unpaid notes sought to have set aside a deed to the debtor's wife on the ground that the property had been purchased and paid for by the debtor and title taken in the wife's name in order to defraud creditors. It was held that the recording of the deed gave constructive notice of the alleged fraud and that the statute of limitations commenced running from that time, even though the plaintiff received actual notice years later and less than five years before the action was commenced. In a later case, however, it was recognized that this rule might not be applicable in all cases and that there was another line of cases where the statute of limitations was held to run from the date actual notice was received. Elkhorn Coal Corporation v. Hite, 225 Ky. 735, 742, 9 S.W.2d 1083, citing Ward v. Thomas, 81 Ky. 452. The case of Ward v. Thomas, though factually distinguishable from the case at bar, announces the appropriate rule where the person asserting a cause of action based upon an instrument recorded more than five years before the bringing of the suit would have had no reason to inquire of the public records. Even in Cogar, supra, it might reasonably be supposed that a creditor would inquire into the business dealings of a debtor in default; at least it can be said that there was as much reason for inquiry at the time the instrument was recorded as at a later date. Here the plaintiff believed its claim to be secured, and while its unsecured position was brought about by its own act of improper recordation, the penalty for this is simply a loss of the security, not subjection to a rule requiring daily inspection of the public records.

5. The plaintiff has been damaged to the extent of $19,607.75, for which sum, with interest, the defendant is personally liable.

Counsel for plaintiff will tender judgment on notice.